ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL V

| EDGARDO L. ORTIZ FEBUS<br><br>Recurrente<br><br>v.<br><br>JUNTA DE LIBERTAD BAJO PALABRA<br><br>Recurrido | **KLRA202400500** | *REVISIÓN ADMINISTRATIVA* procedente de Junta de Libertad Bajo Palabra<br><br>Caso Núm.: 148216<br><br>Sobre: Concesión Libertad Bajo Palabra |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 15 de noviembre de 2024.

Comparece ante este foro, el Sr. Edgardo Ortiz Febus (señor Ortiz o "el recurrente") representado por la Sociedad para Asistencia Legal (SAL), y nos solicita que revisemos una *Resolución* emitida por la Junta de Libertad Bajo palabra (JLBP o Junta) el 15 de agosto de 2024, notificada el 16 de agosto de 2024. Mediante el referido dictamen, la Junta declaró *No Ha Lugar* la solicitud en reconsideración presentada por el señor Ortiz, en la cual solicitaba concedieran el privilegio de libertad bajo palabra.

Por los fundamentos que se exponen a continuación, **REVOCAMOS** el dictamen administrativo recurrido.

## I.

Según surge del expediente, el recurrente cumple una sentencia de cuarenta y siete (47) años por homicidio y ley de armas. El señor Ortiz, cumplió el mínimo de sentencia el 1 de diciembre de 2021, luego de que le aplicaran la Ley Núm. 85-2022, por lo que, cumpliría tentativamente su sentencia el 31 de enero de 2051.

Número Identificador
SEN2024 _____

Desde el 19 de enero de 2023, el recurrente se encuentra integrado por condición de salud en pase extendido con supervisión electrónica bajo la supervisión del Programa de Comunidad de Bayamón.

En agosto de 2023, el recurrente solicitó a la Junta de Libertad Bajo Palabra que le fuera concedido dicho privilegio.[1] Tras examinada su petición, ser remitida para la evaluación correspondiente, y luego de considerados los informes, evaluaciones y expedientes pertinentes, el **5 de febrero de 2024**, la JLBP notificó una *Resolución*, mediante la cual determinó no concederle el privilegio de libertad bajo palabra al señor Ortiz.[2] Asimismo, emitió las siguientes determinaciones de hechos:

1. Del expediente surge que el peticionario se encuentra clasificado en custodia mínima desde el 25 de mayo de 2022.

2. El peticionario cuenta con plan de salida corroborado en las áreas de hogar y amigo consejero.

3. Del expediente surge que el peticionario no acepta la comisión del delito. Tampoco surge del expediente expresión alguna de arrepentimiento por parte del peticionario.

4. Del expediente surge que el peticionario fue sometido a Toma de Muestra de ADN el 13 de abril de 2017.

5. El peticionario completó Programa de Tratamiento Psicoeducativo Aprendiendo a Vivir sin Violencia el 23 de febrero de 2022.

6. No se refleja historial de antecedentes penales previos.

7. No tiene historial de uso o abuso de sustancias controladas o alcohol.

---

[1] *Informe Breve para Referir Casos de Sentencia por Delito Grave y Menos Grave ante la Junta de Libertad Bajo Palabra*, anejo II, págs. 2-5 del apéndice del recurso.
[2] *Resolución*, anejo VIII, págs. 16-19 del apéndice del recurso.

Como indicado, la Junta determinó que del expediente no surgía que el recurrente no había aceptado la comisión del delito, ni que había hecho expresión de arrepentimiento. Finalmente, concluyó no conceder el privilegio, e indicó que volverían a considerarlo para el mes de diciembre de 2024, fecha en que el Departamento de Corrección debería someter un *Informe de ajuste y progreso* con el plan de salida debidamente corroborado.

En desacuerdo, el **14 de febrero de 2024**, el señor Ortiz -por derecho propio- presentó una *Reconsideración a la Junta de Libertad Bajo Palabra*.[3] En esencia, sostuvo que había estado en la libre comunidad desde el 19 de enero de 2023 bajo la Ley Núm. 25, por condiciones de salud terminal. A su vez, indicó que la decisión de la Junta era incongruente, puesto que, había completado el *Programa Psicoeducativo Aprendiendo a Vivir sin Violencia*, poseía custodia mínima por su excelente conducta y buen ajuste institucional, además que contaba con amigo consejero, hogar viable y familia comprometida con su rehabilitación. Por ello, solicitó reconsideraran su decisión, puesto que, cumplía con todos los requisitos que exige la ley.

Posteriormente, según surge de una copia de la *Hoja de Gestión*,[4] el **4 de marzo de 2024**, la Directora de Oficiales Examinadores realizó una llamada al Lcdo. Jesús Miranda Díaz para informarle que, "por error, la Junta de Libertad Bajo Palabra le notificó a Edgardo L. Ortiz Febus una *Resolución* de no conceder el privilegio de libertad bajo palabra, cuando debió ser de concesión."

---

[3] *Reconsideración a la Junta de Libertad Bajo Palabra*, anejo IX, pág. 20 del apéndice del recurso.
[4] *Hoja de Gestión*, anejo X, pág. 21 del apéndice del recurso.

Así las cosas, el **6 de marzo de 2024**, fue notificado el *Informe de Oficial Examinador – Resolución Enmendada*, rendido por el Oficial Examinador, Víctor G. Colón Cintrón.[5] Asimismo, incluyó las mismas determinaciones de hechos, a la que añadió la siguiente:

- (8) Para efectos de un análisis de la totalidad del expediente, se evaluó la opinión de las víctimas, así como la naturaleza y circunstancias de los delitos por los cuales cumple sentencia el peticionario.

De este modo, determinó que el recurrente "había demostrado con sus logros, comportamiento y ajustes institucionales, el grado de rehabilitación obtenido hasta el presente." Por ello, concluyó que el señor Ortiz reunía los requisitos para beneficiarse del privilegio de libertad bajo palabra, sujeto a unas condiciones específicas, recogidas en el *Mandato de libertad bajo palabra*.

El **25 de abril de 2024**, fue presentado el *Informe de Ajuste y Progreso*.[6] En esencia, dicho informe indicó que no habían surgido situaciones negativas en la comunidad. A su vez, que había comparecido de manera puntual a las citas en la oficina de la Junta, y las pruebas toxicológicas habían arrojado resultados negativos. Por último, el informe reflejó que no había alertas relacionadas al participante y que había hecho buen uso de los permisos para salidas a citas médicas.

No obstante, el **7 de junio de 2024**, el Oficial Examinador, Víctor G. Colón Cintrón, rindió una *Resolución Enmendada – Informe de Oficial Examinador*, en el cual determinó no conceder el privilegio de libertad

---

[5] *Informe de Oficial Examinador – Resolución Enmendada*, anejo XI, págs. 22-27 del apéndice del recurso.
[6] *Informe de Ajuste y Progreso*, anejo XII, págs. 28-29 del apéndice del recurso.

bajo palabra al señor Ortiz.[7] Asimismo, concluyó que el caso podría volver a considerarse para el mes de diciembre de 2024, fecha para la cual requirió el *Informe de ajuste y progreso*, y el plan de salida corroborado. Además de incluir nuevamente las mismas determinaciones de hechos anteriormente citadas, añadió las siguientes:

- (6) Del expediente no surge que la condición de salud del peticionario sea catastrófica ni terminal.

- (7) Para efectos de un análisis de la totalidad del expediente, se evaluó la opinión de las víctimas, así como la naturaleza y circunstancias de los delitos por los cuales cumple sentencia el peticionario.

En vista de lo anterior, el **8 de julio de 2024**, la JLBP notificó una *Resolución Enmendada*, mediante la cual acogió el *Informe* del Oficial Examinador.[8]

Insatisfecho con dicho proceder, el **29 de julio de 2024**, el señor Ortiz, mediante su representante legal, presentó una *Moción de Reconsideración*.[9] En esencia, sostuvo que cumplía con los requisitos de la ley y el reglamento de la JLPB. Además, que le "llama la atención lo irregular del tracto que surge del expediente de la Junta y las contradicciones en sus determinaciones […]." Puesto que, inicialmente le habían denegado el privilegio, posteriormente, le notificaron que había sido un error y le concedían el privilegio, sin embargo, nuevamente le denegaron el privilegio. Así las cosas, arguyó que el no concederle el privilegio había sido una determinación injustificada, cuando tenía un excelente expediente. Junto con su moción, presentaron una

---

[7] *Resolución Enmendada – Informe de Oficial Examinador*, anejo XIII, págs. 30-32 del apéndice del recurso.
[8] *Resolución Enmendada*, anejo XIV, págs. 33-36 del apéndice del recurso.
[9] *Moción de Reconsideración*, anejo XV, págs. 37-42 del apéndice del recurso.

*Certificación Médica*, de la Dra. Yanira Benítez, quien indicó que el recurrente padece de las siguientes condiciones médicas: asma, rinitis, urticaria crónica y alergias a medicamentos y alimentos.

El **16 de agosto de 2024**, la JLBP notificó la *Resolución* recurrida, en la cual sostuvo su rechazo.[10]

Aún inconforme con dicha determinación, el 10 de septiembre de 2024, el recurrente presentó el recurso de epígrafe donde le imputó a la JLBP el siguiente señalamiento de error:

> ABUSÓ DE SU DISCRECIÓN LA JUNTA DE LIBERTAD BAJO PALABRA AL DENEGAR EL PRIVILEGIO DE LIBERTAD A PRUEBA AL RECURRENTE AUN CUANDO ÉSTE CUMPLÍA CON TODOS LOS REQUISITOS Y AL BASAR SU DETERMINACIÓN EN QUE EL SR. ORTIZ FEBUS NO ACEPTÓ LOS HECHOS.

El 12 de septiembre de 2024, emitimos una *Resolución* concediéndole a la parte recurrida el término dispuesto en el Reglamento de este Tribunal.

El 18 de octubre de 2024, la JLBP presentó su oposición al recurso.

Con el beneficio de la comparecencia de las partes, disponemos de la controversia que nos ocupa.

**II.**

**-A-**

El Artículo 4.006(c) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico[11] otorga la competencia apelativa al Tribunal de Apelaciones para revisar las decisiones, órdenes y resoluciones finales de las agencias administrativas. *Asoc. Condómines v. Meadows Dev.*, 190 DPR 843, 847 (2014). La revisión judicial de las decisiones administrativas tiene como

---

[10] *Resolución*, anejo XVI, págs. 43-44 del apéndice del recurso.
[11] Ley Núm. 201-2003, 4 LPRA sec. 24y(c).

fin delimitar la discreción de los organismos administrativos, para asegurar que ejerzan sus funciones conforme a la ley y de forma razonable. *Unlimited v. Mun. de Guaynabo*, 183 DPR 947, 965 (2011); *Empresas Ferré v. ARPe*, 172 DPR 254, 264 (2007). Esta doctrina dispone que corresponde a los tribunales examinar si las decisiones de las agencias administrativas fueron tomadas dentro de los poderes delegados y si son compatibles con la política pública que las origina. *Rolón Martínez v. Caldero López*, 201 DPR 26, 35 (2018). A esos efectos, la revisión judicial comprende tres (3) aspectos: (i) la concesión del remedio apropiado; (ii) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial; y, (iii) la revisión completa de las conclusiones de derecho. *Batista, Nobre v. Jta. Directores*, 185 DPR 206, 217 (2012), citando a *Asoc. Fcias v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010); *Mun. de. San Juan v. JCA*, 149 DPR 263, 279-280 (1999).

Dentro de este marco, nuestro Tribunal Supremo ha reiterado que los tribunales apelativos, al ejercer su función revisora, deben conceder una gran deferencia a las decisiones emitidas por las agencias debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados. *Rolón Martínez v. Caldero López*, supra. *Asoc. Fcias. v. Caribe Specialty et al. II.*, supra, 940. Por un lado, nuestro más Alto Foro ha enfatizado que los tribunales, aplicando el criterio de razonabilidad y deferencia, no alterarán las determinaciones de hechos de las agencias, siempre que surja del expediente

administrativo evidencia sustancial que las sustente. *Íd.*

Igualmente, las determinaciones de los entes administrativos tienen una presunción de legalidad y corrección que los tribunales deben respetar mientras la parte que las impugna no presente la evidencia suficiente para derrotarlas. *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008). A la luz de esto, los tribunales deben ser cautelosos al intervenir con las conclusiones e interpretaciones de los organismos administrativos especializados. *Íd.* Ahora bien, esta deferencia reconocida a las decisiones de las agencias administrativas cede en algunas situaciones: (i) cuando la decisión no esté basada en evidencia sustancial; (ii) cuando la agencia haya errado en la aplicación de la ley; (iii) cuando su actuación resulte ser arbitraria, irrazonable o ilegal; y (iv) cuando la actuación administrativa lesiona derechos constitucionales fundamentales. *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 822 (2012), citando a Empresas Ferrer v. A.R.Pe., supra.

Nuestro Tribunal Supremo ha establecido que las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Batista, Nobre v. Jta. Directores,* supra, 216, citando a *Pereira Suárez v. Jta. Dir. Cond.*, 182 DPR 485, 511-512 (2011); *Domínguez v. Caguas Expressway Motors*, 148 DPR 387, 397-398 (1999). La evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una

conclusión." *Íd.*, *Otero v. Toyota*, 163 DPR 716, 728 (2005). Dicho análisis requiere que la evidencia sea considerada en su totalidad, esto es, tanto la que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 437 (1997). Ello implica que, de existir un conflicto razonable en la prueba, debe respetarse la apreciación de la agencia. *Hilton v. Junta de Salario Mínimo*, 74 DPR 670, 687 (1953). Además, la norma de prueba sustancial se sostiene en la premisa de que son las agencias las que producen y determinan los hechos en los procesos administrativos y no los tribunales. *OCS v. Triple-S*, 191 DPR 536, 554 (2014); Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, Ed. Forum, 2013.

Debido a la presunción de regularidad y corrección de los procedimientos y las decisiones de las agencias administrativas, quien alegue ausencia de evidencia sustancial tendrá que presentar prueba suficiente para derrotar esta presunción, no pudiendo descansar en meras alegaciones. *Pacheco v. Estancias*, 160 DPR 409, 431 (2003). Para ello, deberá demostrar que existe otra prueba en el expediente, que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. *Gutiérrez Vázquez v. Hernández*, 172 DPR 232, 245 (2007).

Si la parte afectada no demuestra la existencia de otra prueba que sostenga que la actuación de la agencia

no está basada en evidencia sustancial o que reduzca o menoscabe el valor de la evidencia impugnada, el Tribunal respetará las determinaciones de hecho y no sustituirá el criterio de la agencia por el suyo. *Otero v. Toyota*, supra. En cambio, las conclusiones de derecho son revisables en todos sus aspectos. *García Reyes v. Cruz Auto corp.*, supra*,* 894. De esta manera, los tribunales, al realizar su función revisora, están compelidos a considerar la especialización y la experiencia de la agencia con respecto a las leyes y reglamentos que administra. *Asoc. Vec. de H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75-76 (2000). Así pues, si el punto de derecho no conlleva interpretación dentro del marco de la especialidad de la agencia, entonces el mismo es revisable sin limitación. *Rivera v. A & C Development Corp.*, 144 DPR 450, 461 (1997).

Sin embargo, aun cuando el Tribunal tiene facultad para revisar en todos sus aspectos las conclusiones de derecho de una agencia, se ha establecido que ello no implica que los tribunales revisores tienen la libertad absoluta para descartarlas libremente. *Federation Des Ind. v. Ebel*, 172 DPR 615, 648 (2007); *López Borges v. Adm. Corrección*, 185 DPR 603, 626 (2012). Si del análisis realizado se desprende que la interpretación que hace una agencia de su reglamento o de la ley que viene llamada a poner en vigor resulta razonable, el Tribunal debe abstenerse de intervenir. *Cruz v. Administración*, 164 DPR 341, 357 (2005).

-**B**-

La Junta de Libertad Bajo Palabra fue creada mediante la aprobación de la Ley Núm. 118 de 22 de julio de 1974, 4 LPRA sec. 1501 *et seq*. Este organismo tiene

la autoridad de conceder a cualquier persona recluida en una institución correccional de Puerto Rico el privilegio de cumplir la última parte de su condena en libertad bajo palabra. 4 LPRA sec. 1503; *Maldonado Elías v. Gonzalez Rivera,* 118 DPR 260, 275 (1987). Así pues, es la JLBP quien tiene la autoridad de conceder a cualquier persona recluida en una institución correccional de Puerto Rico el privilegio de cumplir la última parte de su condena en libertad bajo palabra, sin tener que estar encarcelado. *Benítez Nieves v. ELA*, 202 DPR 818, 825, 835 (2019). Es menester señalar que "el beneficio de la libertad bajo palabra no es un derecho reclamable, sino un privilegio cuya concesión y administración recae en el tribunal o en la JLBP." *Quiles v. Del Valle*, 167 DPR 458, 475 (2006).

En particular, enfatizamos que la JLBP tendrá facultad para conceder el privilegio de libertad bajo palabra a una persona recluida en una institución penal en Puerto Rico, tomando en consideración los siguientes criterios:

> (1) La naturaleza y circunstancias del delito o delitos por los cuales cumple sentencia.
>
> (2) Las veces que el confinado haya sido convicto y sentenciado.
>
> (3) Una relación de liquidación de la sentencia o sentencias que cumple el confinado.
>
> (4) La totalidad del expediente penal, social, y los informes médicos e informes por cualquier profesional de la salud mental, sobre el confinado.
>
> (5) El de ajuste institucional y del social y psicológico del confinado, preparado por la Administración de Corrección y el médico y psiquiátrico preparado por Salud Correccional del Departamento de Salud.
>
> (6) La edad del confinado.

(7) El o los tratamientos para condiciones de salud que reciba el confinado.

(8) La opinión de la víctima.

(9) Planes de estudios, adiestramiento vocacional o estudio y trabajo del confinado.

(10) Lugar en el que piensa residir el confinado y la actitud de dicha comunidad, de serle concedida la libertad bajo palabra.

(11) Cualquier otra consideración meritoria que la Junta haya dispuesto mediante reglamento.

La Junta tendrá la discreción para considerar los mencionados criterios según estime conveniente y emitirá una resolución escrita con determinaciones de hechos y conclusiones de derecho. Art. 3-D de la Ley Núm. 118 de 22 de julio de 1974, 4 LPRA sec. 1503d, según enmendada.

Además, deberá considerarse el mejor interés de la sociedad y si el privilegio ayudará en la rehabilitación del delincuente. Art. 3 de la Ley Núm. 118-1974, *supra*. Por esta razón, "la Junta tendrá ante sí toda la información posible sobre el historial social, médico, ocupacional y delictivo de cada confinado, incluyendo la actitud de la comunidad respecto a la liberación condicional del sujeto, y una evaluación que deberá someter la Administración de Corrección." *Íd.*

Para cumplir con estos propósitos, se le delegó a la JLBP el poder para promulgar las reglas y reglamentos que entienda convenientes. *Íd.* En virtud de ello, se aprobó el *Reglamento de la Junta de Libertad Bajo Palabra*, Reglamento Núm. 9232 del 18 de noviembre de 2020, (Reglamento Núm. 9232). En lo concerniente, destacamos el Artículo X Sección 10.1 del Reglamento Núm. 9232, el cual dispone:

A. La Junta evaluará las solicitudes del privilegio, caso a caso, conforme al grado

de rehabilitación y ajuste que presente el peticionario durante el término que ha estado en reclusión.

B. Al evaluar los casos, la Junta tomará en consideración los siguientes criterios con relación al peticionario:

1. Historial delictivo

    a. La totalidad del expediente penal.

    b. Los antecedentes penales. Se entenderá por antecedentes penales las veces que un peticionario haya sido convicto y sentenciado.

    […]

2. Una relación de liquidación de la(s) sentencia(s) que cumple el peticionario.

3. La clasificación de custodia, el tiempo que lleva en dicha clasificación y si hubo cambio de clasificación y las razones para ello.

    a. La Junta no concederá libertad bajo palabra cuando el peticionario se encuentre en custodia máxima.

4. La edad del peticionario.

5. La opinión de la víctima.

    a. La opinión de la víctima constituye un factor a ser considerado por la Junta, pero la determinación sobre el grado de rehabilitación de un peticionario y si está capacitado para continuar cumpliendo su sentencia en la libre comunidad es prerrogativa de la Junta.

6. El historial social.

[…]

7. Si cuenta con un plan de salida estructurado y viable en las áreas de oferta de empleo y/o estudio, residencia y amigo consejero.

    […]

    e. Residencia

      i. Todo peticionario tiene que indicar el lugar en el cual piensa residir de serle concedida la libertad bajo palabra, bien sea en una residencia o un programa interno.
      […]

iii. De proponer una residencia, el peticionario proveerá el nombre completo, el número de teléfono y correo electrónico de la persona con la cual residirá, o de algún familiar cercano, así como la dirección física de la residencia. En estos casos, se realizará una investigación sobre la actitud de la comunidad donde propone residir el peticionario, de serle concedida la libertad bajo palabra.

iv. Si el peticionario interesa ingresar a un programa interno, tendrá que presentar la carta de aceptación del programa, así como proponer una residencia alterna en la cual disfrutará de los pases, en los casos que aplique. Dicha residencia alterna será corroborada para determinar su viabilidad. Si la residencia alterna no resulta viable, el peticionario no podrá disfrutar de pases hasta tanto no provea una residencia alterna viable, y así lo autorice la Junta.

[…]

f. Amigo Consejero

i. El amigo consejero tiene la función de cooperar con la Junta y el Programa de Comunidad del Departamento de Corrección y Rehabilitación, en la rehabilitación del peticionario.

[…]

iii. Se realizará una investigación en la comunidad sobre la conducta e integridad moral de la persona propuesta para el amigo consejero.

[…]

v. La falta de amigo consejero no será razón suficiente para denegar el privilegio.

8. Historial de salud

a. Se tomarán en consideración todos los informes emitidos por cualquier profesional de la salud mental, que formen parte del historial psicológico preparado por el Departamento de Corrección y Rehabilitación y/o el historial psiquiátrico preparado por Salud Correccional, según apliquen.

b. Historial médico del peticionario.

c. Tratamientos para condiciones de salud que haya recibido o reciba el peticionario.

[…]

iii. Se requerirá haber tomado y culminado en la institución el Programa de Aprendiendo a Vivir sin Violencia a los peticionarios que cumplan pena de reclusión por los siguientes delitos:

[…]

11. Cumplimiento con la toma de muestra de ADN, en aquellos casos en que el peticionario extingue sentencia por alguno de los delitos identificados en el Artículo 8 de la Ley Núm. 175 de 24 de julio de 1998, según enmendada.

12. La Junta tendrá discreción para considerar los mencionados criterios según considere conveniente y cualquier otro meritorio con relación a la rehabilitación del peticionario y al mejor interés de la sociedad.

A estos efectos, es preciso enfatizar que, "[l]a decisión de conceder o denegar los beneficios de libertad bajo palabra descansa en la entera discreción de la Junta, y no existe un derecho a obtener tales beneficios." *Maldonado Elías v. González Rivera*, 118 DPR 260, 275-276 (1987).

En adición a la Sección 10.1, previamente citada, se dispone en la Sección 10.2 del Reglamento Núm. 9232, *supra*, que incluye:

A. El Departamento de Corrección y Rehabilitación, a través de sus funcionarios, empleados y/o representantes autorizados, proveerá a la Junta todo documento que contenga información relacionada a los criterios antes esbozados. La producción de estos documentos se hará para la fecha de la vista de consideración o a la fecha en que se vuelva a reconsiderar el caso. En cumplimiento con lo anterior, el Departamento de Corrección y Rehabilitación, remitirá a la Junta los siguientes documentos:

[…]

3. Informe de libertad bajo palabra debidamente complementado.

[…]

7. Informe Breve de Libertad Bajo Palabra

[…]

10. Certificado de que el peticionario completó los tratamientos requeridos, y los informes de evaluación relacionados a dichos tratamientos.

11. Informe de Ajuste y Progreso

[…]

12. Evaluación médica, psicológica y/o psiquiátrica

a. La Junta podrá requerir la evaluación médica, psicológica o psiquiátrica del Negociado de Rehabilitación y Tratamiento o de Salud Correccional, o entidad análoga debidamente acreditada por el Estado, en aquellos casos en que la persona se encuentre cumpliendo sentencia por delitos contra la vida y/o delitos sexuales, conforme al estado de derecho vigente a la fecha en que fue sentenciado, o en cualquier otro caso en que la Junta lo considere necesario.

b. Estos informes tendrán una vigencia de tres (3) años desde la fecha de la evaluación.

c. La Junta en su discreción podrá requerir otra evaluación, aunque tenga una vigente.

Adicionalmente, el Reglamento Núm. 9232 dispone en la Sección 12.2 sobre *Reconsideración* de casos sostiene lo siguiente:

A. La reconsideración dispuesta en esta sección se refiere a aquellos casos en que se ha denegado la libertad bajo palabra y que la Junta dispuso que volverá a considerar dentro de un (1) año desde la fecha en que consideró el caso por última vez. La Junta podrá volver a considerar un caso fuera del término antes dispuesto, por causa meritoria. […]

Finalmente, en cuanto a la concesión o denegatoria del privilegio, la Sección 12.3 (B) del Reglamento Núm. 9232, *supra*, establece que, si la Junta deniega la libertad bajo palabra expresará individualmente en su resolución las determinaciones de hecho y conclusiones de derecho que fundamentan dicha determinación, así como indicará la fecha en que volverá a considerar el caso.

**III.**

En el caso de autos, el señor Ortiz alega que erró la JLBP al denegarle su solicitud de libertad bajo palabra, por no aceptar lo hechos del delito imputado, aun cuando cumple con todos los requisitos de la Ley y Reglamento. Asimismo, arguye que la decisión de la Junta es una con falta de base y méritos. Debido a que, inicialmente reconocen que el señor Ortiz cumple con todos los requisitos del reglamento, pero aun así sustentan su decisión en la falta de aceptación de la comisión del delito y su expresión de arrepentimiento. Esboza, que dichas aceptaciones no son requeridas ni por reglamentación, ni legislación. A su vez, indica que la determinación que realizó la Junta sobre sus condiciones de salud al no ser catastróficas tampoco es un criterio en ley. Por ello, sostiene que la JLBP abusó de su discreción al no concederle el privilegio de libertad bajo palabra, puesto que, no tiene casos, denuncias o querellas ante los tribunales o instituciones penales; se encuentra en custodia mínima desde el 2022; tiene un plan de salida estructurado y amigo consejero; completó el Programa Aprendiendo a Vivir sin Violencia; y posee la toma de muestra de ADN.

Por su parte, la JLBP sostiene que la decisión fue basada primordialmente en la opinión de las víctimas, su

condición de salud al no ser catastrófica y en la naturaleza y circunstancias de los delitos cometidos. Añadieron en cuanto a la opinión de las víctimas, que ésta no había sido parte de la investigación, ni del informe del Programa de la Comunidad, ni Informe del Oficial Examinador, y no fue revelada al recurrente, ni abogado, al ser confidencial. De otra parte, la naturaleza y circunstancias de los delitos, fue otro factor que evaluaron para denegar el privilegio. Finalmente, esbozaron que independientemente de la determinación de su condición de salud, deben considerar el historial médico, puesto que, forma parte de la legislación y reglamentación aplicable.

Conforme surge de los documentos de autos, una vez sometida la correspondiente solicitud por parte del recurrente, la Junta de Libertad Bajo Palabra dio curso a los procedimientos pertinentes para evaluar el cumplimiento de las condiciones y criterios legales y reglamentarios aplicables. Se desprende de la prueba ante nos que, el señor Ortiz cumple con los criterios establecidos por la JLBP.

Consideramos que los criterios utilizados por la Junta, aunque correctos, están mal aplicados en este caso. Tal y como surgen de las propias determinaciones de hechos, el recurrente se encuentra en custodia mínima desde mayo de 2022; tiene un plan de salida corroborado en las áreas del hogar y amigo consejero; fue sometido a Toma de Muestra de ADN; completó el Programa de Tratamiento Psicoeducativo Aprendiendo a Vivir sin Violencia; evaluaron la opinión de las víctimas, naturaleza, y circunstancias de los delitos por el cual cumple sentencia. A su vez, los informes presentados

demostraron que el señor Ortiz no demostró situaciones negativas en la comunidad, arrojó negativo a la prueba toxicológica, y no hubo alertas del sistema de monitoreo electrónico.

En el Artículo X, Sección 10.1 del Reglamento de la JLBP, el cual como se indicó previamente establece los criterios para la elegibilidad que deben ser tomados en cuenta por la Junta al evaluar las solicitudes del privilegio de libertad bajo palabra. En ninguno de los criterios que establecen toman en consideración si el recurrente aceptó o no la comisión del delito, o si expresó su arrepentimiento. De igual forma, no dispone que, de tener un historial de salud, su condición deba ser catastrófica para que sea considerado al privilegio de libertad bajo palabra. Al contrario, el reglamento dispone que la JLBP tomará en consideración el historial médico del peticionario, los tratamientos para las condiciones de salud, si tomó y culminó el Programa de Aprendiendo a Vivir sin Violencia, -el cual el señor Ortiz cumplió-, entre otros criterios.

En cuanto a la opinión de las víctimas, aun cuando es uno de los criterios que debe tomar en consideración la Junta, la reglamentación aplicable dispone que "la determinación sobre el grado de rehabilitación de un peticionario y si está capacitado para continuar cumpliendo su sentencia en la libre comunidad es prerrogativa de la Junta."

No obstante, del expediente surge que las opiniones de los testigos que la Junta hace referencia no son vigentes. Las fechas de los testimonios de los testigos son incluso anteriores a la primera *Resolución* cuando no incluyeron como determinaciones de hechos que habían

evaluado la opinión de las víctimas. No fue hasta el 5 de marzo de 2024 que realizaron una enmienda a la resolución donde incluyeron como parte de las determinaciones de hechos que habían evaluado la opinión de las víctimas, y aun así su decisión había sido conceder el privilegio.

Ciertamente la JLBP tiene una amplia discreción al evaluar las peticiones ante su consideración. También es de destacar que las condiciones de salud del peticionario no le merecen en este caso trato especial. Sin embargo, es meritorio resaltar que este sí ha cumplido claramente con todos los criterios reglamentarios para una evaluación positiva del privilegio solicitado. Tan es así que la segunda *Resolución* concluyó que era meritorio conceder el privilegio solicitado. Es en la tercera *Resolución* que la JLBP revoca alegando darle peso a la opinión de las víctimas, cuando esas opiniones las tenían desde el principio. Este énfasis en este último elemento es traído de forma acomodaticia cuando previamente la JLBP había concluido que el peticionario cumplía con todo lo requerido. Realmente nada había cambiado de la segunda a la tercera *Resolución*. Es por ello, que concluimos que la determinación de la Junta de Libertad Bajo Palabra no tiene base legal que la sustente y, por tanto, concluimos que cometió el error señalado. Ahora la JLBP deberá poner en vigor esta *Sentencia* y dar la supervisión adecuada al recurrente para que cumpla con los elementos de supervisión requeridos.

### IV.

Por los fundamentos antes expuestos, **REVOCAMOS** la determinación recurrida. Se devuelve el asunto a la

Junta de Libertad Bajo Palabra para que proceda conforme a lo aquí dispuesto.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones